SCOTT C. CLARKSON, ESQ.  SBN 143271
EVE A. MARSELLA, ESQ.  SBN 165797
CLARKSON, GORE & MARSELLA
A PROFESSIONAL LAW CORPORATION
3424 Carson Street, Suite 350
Torrance, California 90503
(310) 542-0111 Telephone
(310) 214-7254 Facsimile

Counsel to plaintiff Monteleone & McCrory LLP

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No. 6:08-bk-24324-TD |
| MODTECH HOLDINGS, INC., | Chapter 11 |
| Debtor and Debtor in Possession. | Adv. Case No. 6:09-ap-01268-TD |
| | **MONTELEONE & MCCRORY LLP'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| MONTELEONE & McCRORY, LLP, | |
| Plaintiff, | **[SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW FILED CONCURRENTLY HEREWITH]** |
| v. | |
| MODTECH HOLDINGS, INC., and MODTECH STRUCTURES LLC, | **Live Hearing:** |
| Defendants. | DATE:    **January 28, 2010** |

**Live Hearing:**
DATE:    **January 28, 2010**
TIME:    **10:00 a.m.**
PLACE: **Courtroom 1345**
            **225 E. Temple Street**
            **Los Angeles, CA 90012**
-and-

**Via Video Conference:**
DATE:    **January 28, 2010**
TIME:    **10:00 a.m.**
PLACE: **Courtroom 303**
            **3420 Twelfth Street**
            **Riverside, CA 92501**

**TO DEFENDANTS AND THEIR ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that on January 28, 2010 at 10:00 a.m., in Courtroom 1345 located at the Edward R. Roybal Federal Building and Courthouse, 255 East Temple Street, Los Angeles, California, 90012 (Live Hearing) and Courtroom 303 of the Riverside Federal Building, located at 3420 Twelfth Street, Riverside, CA 92501-3819 (Video Conference), Monteleone & McCrory, LLP ("M&M" or "Movant"), shall move the Court for an order granting summary judgment in favor of M&M, determining that M&M holds a valid, first priority secured interest in certain litigation proceeds paid, or to be paid, to the Debtor arising from litigation in which M&M was pre-petition and Special Counsel to the Debtor, up to the amount of its revised pre-petition claim of $776,336.39.

The Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Separate Statement of Uncontroverted Facts and Conclusions of Law, all pleadings and papers on file in this action, including, but not limited to the Complaint and the Stipulation of Undisputed Facts, and upon such other matters as may be presented to the Court at the time of the hearing.

The Motion will be heard both by live appearances in Courtroom 1345 of the Edward R. Roybal Federal Building and Courthouse, the address of which appears above, and via video conference in Courtroom 303 of the Riverside Federal Building, the address of which also appears above. This Motion was made following several conferences of counsel.

/////

/////

/////

/////

/////

/////

/////

2

**PLEASE TAKE FURTHER NOTICE** that pursuant to Stipulation between the

Parties, any oppose or otherwise response to the Motion, must file and serve on the Movant, the

Debtor, the Committee, the Office of the United States Trustee, and other interested parties a

complete written statement of all reasons in opposition or in response thereto, or a written

statement that the Motion will not be opposed, along with Statement of Genuine Issues, not later

than January 14, 2010, and that Replies, if any, shall be filed by January 20, 2010.

Dated:  December 28, 2009                CLARKSON, GORE & MARSELLA, APLC


By: _____
        Scott C. Clarkson, Esq.
        Eve A. Marsella, Esq.
        Attorneys for plaintiff Monteleone & McCrory
        LLP

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................................. 1

II.     STATEMENT OF RELEVANT AND UNDISPUTED FACTS ........................ 2

III.    ARGUMENT ...................................................................................... 8

        A       Federal Rules of Civil Procedure Section 56(c) and Local Rule 7056-1
                Provide for the Use of Summary Judgment in Bankruptcy Court ........................ 8

        B.      M&M and Modtech Entered into a Valid and Enforceable Written
                Retainer Agreement for the Providing of Legal Services by M&M
                To Modtech ................................................................................. 8

        C.      The Written Retainer Agreement Includes a Valid and Enforceable Lien
                Provision, Providing for a Lien in Favor of M&M Over the Proceeds of
                Any and All Claims and Causes of Action Which Were the Subject
                of M&M's Representation of Modtech ............................................. 10

        D.      Upon Entering Into the Written Retainer Agreement in November, 2004,
                the M&M Lien Became Perfected As to the Proceeds of Any and All Claims
                and Causes of Action Which Were the Subject of M&M's Representation of
                Modtech ...................................................................................... 13

        E.      Proceeds Over Which M&M's Charging Lien Attaches Includes the
                Heritage High School, JT Plastering and Porter/Kennedy Elementary
                School Matters ............................................................................. 14

        F.      The Parties Agreed that M&M Timely Submitted a Proof of Claim,
                And its Claimed Amount is Reasonable .............................................. 14

        G.      Public Policy Favors Finding a Priority Charging Lien .......................... 15

IV.     CONCLUSION ................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Bandy v. Mt. Diablo Unified School District
    (1976) 56 Cal. App.3d 230, 235, 126 Cal. Rptr. 890 ........................................................ 11

Carroll v. Interstate Brands Corporation
    (2002) 99 Cal. App.4th 1168, 1172, 121 Cal. Rptr.2d 532 ........................................ 12, 13

Cetenko v. United California Bank
    (1982) 30 Cal.3d 528, 532, 179 Cal. Rptr. 902 .................................................... 12, 13, 15

Fletcher v. Davis
    (2004) Cal 4th 61, 14 Cal. Rptr.3d 58 .............................................................................. 10

Haupt v. Charlie's Kosher Market
    (1941) 17 Cal.2d 843, 845, 112 P.2d 627 ........................................................................ 12

In re Anderson
    (Bankr. S.D. Ohio 1988) 95 Bankr. 506, 508 .................................................................. 11

In re Bouzas
    (2003) 294 B.R. 318, 323 ................................................................................................ 13

In re Bennett
    (9th Cir. 2002) 298 F.3d 1059, 1064 ............................................................................... 12

In re Durability Inc.
    (10th Cir. 2000) 212 F3d 551, 555 .................................................................................... 8

Isrin v. Superior Court
    (1965) 63 Cal.2d 153, 157, 45 Cal. Rptr. 320 ................................................................. 12

Matter of Pacific Far East Line, Inc.
    (9th Cir. 1981) 654 F.2d 664, 668 .............................................................................. 11, 12

Ramirez v. Sturdevant
    (1994) 21 Cal. App. 4th 904, 913, 26 Cal. Rptr. 2nd 554, 558 .......................................... 8

Saltarelli & Steponovich v. Douglas
    (1995) 40 Cal. App.4th 1, 5-6, 46 Cal. Rptr.2d 683 ................................................... 11, 13

TABLE OF AUTHORITIES
(Cont'd)

Page(s)

**Statutes**

California Civil Code

     Section 2881 ........................................................................................................... 12

     Section 2897 ........................................................................................................... 13

California Rules of Professional Conduct

     Rule 3-300 ....................................................................................................... 8, 9, 10

Central District Bankruptcy

     Rule 7056-1 ............................................................................................................... 8

Federal Rules of Civil Procedure

     Section 56(c) ............................................................................................................. 8

**Other**

Vapnek, Tuft, 5 <u>California Practice Guide: Professional Responsibility</u>
     Form 5; EE (2006) ................................................................................................... 13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

**MONTELEONE & McCRORY, LLP's MOTION FOR SUMMARY JUDGMENT**

## I.

## INTRODUCTION

On October 20, 2008, Modtech Holdings, LLC, ("Modtech" or "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court, Central District of California, Riverside Division (the "Bankruptcy Case"). Since that time, Modtech has been operating as a Debtor in Possession in this case.

Plaintiff Monteleone and McCrory LLP ("M&M" or "Movant") has served as construction litigation counsel for Modtech since approximately November, 2004, when M&M and Modtech entered into a written retainer agreement for legal services. In that capacity, over the past 5 years, M&M has prosecuted and defended a number of state court construction disputes in court, in arbitrations, and in mediations. A number of these matters, for which M&M was prosecuting actions on behalf of Modtech at the time of the Bankruptcy Case, sought monetary damages of significant amounts. At the time of the filing of the petition, M&M was owed substantial attorney's fees, and advances for expert fees and costs by Modtech for the services M&M had provided to that date.

Subsequent to the bankruptcy filing, M&M was retained by Modtech to continue to represent it as Special Counsel in four (4) matters for which Modtech seeks monetary damages, inclusive of the following projects: Heritage High School, JT Plastering, Monroe Middle School and Porter/Kennedy Elementary Schools. M&M has been successful in resolving the Heritage High School, JT Plastering and Monroe Middle School matters since becoming Special Counsel, resulting in the generating of $360,248.01 in settlement proceeds, currently maintained in a blocked DIP account with the Debtor. M&M is currently preparing to mediate, and if not successful, litigate the final Porter/Kennedy Elementary School matter by the spring of 2010, which is expected to generate even more funds.

1     M&M has timely filed with the Court an Amended Proof of Claim, and is currently

2  seeking a revised pre-petition claim of $776,336.39[1].

3     Although M&M has named Modtech in this adversary proceeding, there has been, and

4  is, no real dispute as between Modtech and M&M as to the nature of the relationship, the fees

5  and costs incurred, or the validity and enforceability of the attorney charging lien. The real

6  dispute is between M&M and the recent purchasers of certain Modtech assets, Laurus Master

7  fund, Ltd., a Cayman Islands company (in liquidation), Valens Offshore SPV II, Corp., a

8  Delaware corporation, and Valens U.S. SPV I, Ltd., a Delaware limited liability company (who

9  designated and transferred title to the purchased assets to Modtech Structures, LLC) and, who

10 claim a priority position to M&M as to the proceeds of the litigation matters as a purchaser of

11 some of Modtech's assets. Modtech Structures LLC has recently been added to this action as an

12 additional defendant by stipulation of the parties.

13    M&M contends that the written retainer agreement entered into with Modtech in

14 November, 2004, contains a valid, perfected and enforceable attorney's charging lien, first in

15 priority, not only as against Modtech, but also as against third parties, including, but not limited

16 to Modtech Structures LLC, over litigation proceeds obtained from the Heritage High School,

17 JT Plastering, Monroe Middle School and Porter/Kennedy Elementary School matters, up to the

18 full amount of its claim of $776,336.39. By this Motion, M&M seeks an Order and Judgment of

19 this Court finding this to be the case.

20

21                                    **II.**

22          **STATEMENT OF RELEVANT AND UNDISPUTED FACTS**

23

24    As of November 1, 2004, and throughout 2005, Ron Savona ("Savona") was the Chief

25 Operating Officer of Modtech. After leaving the position of COO, Savona became Executive

26  _____

27  [1]  Since the filing of this Amended Proof of Claim, M&M has received certain payments from Modtech's
    bonding company, Liberty Mutual Insurance Company, reducing the M&M Claim to $776,336.39 (stipulated
28    to by defendants within the Stipulation of Undisputed Facts Nos. 34 and 35).

Vice President of Modtech, and held that position up to the date of Modtech's bankruptcy filing on October 20, 2008. **[Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 1 and 2]**

Modtech was a publicly held company and a Delaware Corporation, authorized to do business in California, during all of 2004 and 2005. **[Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 3, 4 and 5]**

At some point in time in the fall of 2004, Savona made the decision that Modtech needed to retain legal counsel to assist it in connection with certain pending construction projects. The initial projects for which Savona believed Modtech needed legal counsel included what have been called the Heritage High School and Monroe Middle School Projects.  At some point in time in the fall of 2004, Savona also came to the conclusion that Modtech needed to retain legal counsel to assist it with a variety of legal issues and/or matters, including, but not limited to contract and construction related issues. **[Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 6, 7 and 8]**

In early November, 2004, Savona and others at Modtech met with Pat Duffy ( "Duffy"), a partner at the M&M law firm, at Modtech's offices in Perris, California for purposes of discussing certain legal matters and retaining M&M. Savona and Duffy discussed the Heritage High School and Monroe Middle School projects, among other things. At the November, 2004 meeting at Modtech's offices, Savona retained M&M to represent Modtech. It was at this same meeting that Duffy advised Savona that his firm would require that the company execute a written retainer agreement with the firm, that he would send Savona the proposed retainer agreement for his review, and that if he had any questions about it, he should contact Duffy. **[Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 9 through 13]**

Exhibit "A", attached to the concurrently filed M&M Separate Statement of Uncontroverted Facts and Conclusions of Law and the Stipulation of Undisputed Facts, is a true and correct copy of the November 12, 2004 written retainer agreement entered into between Modtech and M&M for the provision of legal services by the firm. Savona executed the Retainer Agreement as COO of Modtech in November, 2004, after first reviewing it. Modtech

1   believed the terms and conditions contained within the Retainer Agreement were fair and

2   reasonable. Savona was given a reasonable period of time to review the Retainer Agreement,

3   and to consult with other counsel of his choosing regarding the terms and conditions. Savona

4   chose not to consult with another lawyer regarding the terms and conditions, and did not have

5   any questions about the terms or conditions contained within the Retainer Agreement.

6   **[Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 14 through 20]**

7   By executing the Retainer Agreement, Savona understood that Modtech was agreeing to

8   compensate M&M on an hourly basis for the services provided by its lawyers, paralegals and

9   consultants, along with their reasonable costs and expenses. At the time of executing the

10   Retainer Agreement, Savona had the authority of Modtech to do so. After executing the

11   Retainer Agreement, Savona returned the executed agreement to M&M. **[Separate Statement**

12   **of Uncontroverted Facts and Conclusions of Law Nos. 21, 22 and 23]**

13   Following the retention of M&M in November, 2004, Modtech personnel were

14   authorized to contact M&M to request it to provide legal services on specific and general legal

15   matters. Jim Gasper ("Gasper") was the Modtech person assigned by Modtech to act as the

16   primary liaison with M&M, regarding the provision of legal services. Gasper was authorized by

17   Modtech at all times between November 12, 2004 and October 19, 2008 to request M&M to

18   provide legal services on behalf of Modtech. Savona provided Gasper with the authorization to

19   retain M&M to provide legal services on behalf of Modtech. Savona never became aware of any

20   instance where Gasper retained M&M to provide legal services on behalf of Modtech that

21   Savona or others at Modtech had not authorized**. [Separate Statement of Uncontroverted**

22   **Facts and Conclusions of Law Nos. 24 through 28]**

23   Gasper was employed with Modtech between at least November 12, 2004 and October

24   20, 2008. Gasper's duties included keeping up to date on the various legal matters and reporting

25   to Savona and others within Modtech on a regular basis, as well as reviewing and approving

26   legal invoices from M&M. **[Separate Statement of Uncontroverted Facts and Conclusions**

27   **of Law Nos. 29, 30 and 31]**

28   /////

Modtech representatives never questioned any legal invoices from M&M that were not addressed and resolved by the law firm and Modtech. At the time Modtech filed for bankruptcy protection on October 20, 2008, Modtech owed M&M $776,336.39 in legal fees, costs and expert fees. The unpaid legal fees and costs sought by M&M in the pending Modtech bankruptcy proceeding of $776,336.39 are reasonable. **[Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 32, 33 and 34]**

Laurus did not file a UCC financing statement with the California Secretary of State with respect to any lien or other rights against Modtech at any time, and did not file a UCC financing statement with the Delaware Secretary of State until September 26, 2006. **[Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 35 and 36]** Laurus recently purchased certain assets of Modtech, which they contend includes any and all proceeds from the four litigation matters identified herein below, subject to a determination by this Court as to the validity and enforceability of M&M's attorney's lien. **[Separate Statement of Uncontroverted Facts and Conclusions of Law No. 47]** Laurus assigned and transferred its rights in the Modtech purchased assets to Modtech Structures LLC **[Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 45, 46 and 48]**

Between November 12, 2004 and October 19, 2008, M&M represented Modtech in a number of litigation matters, including, but not limited to:

(a) Litigation against the San Diego Unified School District in connection with the manufacture and installation of the Porter and Kennedy Elementary School Projects (*Modtech v. San Diego Unified School District*, San Diego County Superior Court Case No. 37-2008-00097028-CU-BC-CTL) ("Porter/Kennedy Elementary Schools");

(b) Litigation against the Liberty Union High School District regarding the Debtor's work on the 2005 Heritage High School Project (*Modtech Holdings, Inc. v. Liberty Union High School District*, Contra Costa County Superior Court, Case No. C06-00239) ("Heritage High School");

(c) Litigation against the Campbell Union Elementary School District seeking damages in excess of $4 million (*Modtech Holdings, Inc. v. Campbell Union Elementary*

*School District, et al.,* Santa Clara County Superior Court, Case No. 1-05-CV-049363)

("Monroe Middle School"); and

(d) Litigation against J T Plastering, Inc., a subcontractor to Modtech, arising from

services performed on the Landmark Elementary School, located in Watsonville,

California (*Modtech Holdings, Inc. v. J & T Plastering, Inc.,* Los Angeles County

Superior Court, Case No. BC390871) ("JT Plastering").

**[Separate Statement of Uncontroverted Facts and Conclusions of Law No. 39]**

Subsequent to Modtech's bankruptcy filing, M&M has been retained, by Order of the

Bankruptcy Court, as Special Counsel to Modtech in connection with (a) Porter/Kennedy

Elementary Schools; (b) Heritage High School; (c) Monroe Middle School; and (d) J T

Plastering matters. As part of the Orders appointing M&M Special Counsel to Modtech

Holdings, Inc., M&M agreed, among other things, to place any and all settlement and litigation

proceeds obtained on behalf of Modtech into a blocked DIP account (in accordance with the

specific orders of the court pertaining to M&M's right to recover attorney's fees and costs out

of such recoveries). **[Separate Statement of Uncontroverted Facts and Conclusions of Law
No. 40]**

M&M prepared and timely filed an Amended Proof of Claim in the pending Modtech

bankruptcy proceeding on or about February 23, 2009, a true and correct copy of which is

attached to the Statement of Uncontroverted Facts and Conclusions of Law and the Stipulation

of Undisputed Facts hereto, and incorporated herein by reference as Exhibit "B". **[Separate
Statement of Uncontroverted Facts and Conclusions of Law No. 41]**

Subsequent to October 20, 2008 and after being retained as Special Counsel for

Modtech, M&M has recovered certain monies in connection with the JT Plastering and Heritage

High School matters, in the respective sums of $46,519.66, and $313,728.35, after deducting for

court-ordered/agreed upon fees and costs. The monies recovered on behalf of Modtech by

M&M in connection with the JT Plastering and Heritage High School matters have been placed

in a blocked DIP account maintained by Modtech, and identified as "Modtech Litigation Fund

Account" maintained at U S Bank as "ABA #122-235-821". The sole remaining action for

which M&M continues to represent Modtech is the Porter/Kennedy Elementary Schools matter, which is currently scheduled for mediation in December of this year, and a trial date of February 26, 2010. **[Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 42 and 43].**

On September 22, 2009, Modtech Structures LLC, a California limited liability company was formed. **[Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 44].**

On November 12, 2009, Laurus Master Fund, Ltd., a Cayman Islands company (In liquidation), Valens Offshore SPV II, Corp., a Delaware corporation, and Valens U.S. SPV I, LLC, a Delaware limited liability company, purchased and designated Modtech Structures, LLC to take title to certain assets of Modtech holdings, Inc. (following an Order of the Bankruptcy Court entered on September 3, 2009), including but not limited to the claims, causes of action and proceeds from the same (litigation settlement proceeds), known as the (a) Porter/Kennedy Elementary Schools; (b) Heritage High School; (c) Monroe Middle School; and (d) J T Plastering matters, subject to, and contingent upon, the final determination of the validity, priority, extent and amount of the Monteleone & McCrory LLP claimed attorney's lien, and further order of this Court (the "Modtech Purchased Assets"). **[Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 45].**

On November 12, 2009, Modtech Structures, LLC acquired title to the Modtech Purchased Assets, subject to, and contingent upon, the final determination of the validity, priority, extent and amount of the Monteleone & McCrory LLP claimed attorney's lien, and further order of this Court. **[Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 47].**

/////
/////
/////
/////
/////

On November 19, 2009, by stipulation of the parties, Modtech Structures LLC was added to the pending adversarial Proceeding as an additional party defendant.

## III.

## ARGUMENT

### A.    Federal Rules of Civil Procedure Section 56(c) and Local Rule 7056-1 Provide for the Use of Summary Judgment in Bankruptcy Court

A motion for summary judgment provides a procedure for terminating without trial actions in which there is "no genuine issue as to any material fact and…the movant is entitled to judgment as a matter of law" [Federal Rules of Civil Procedure Section 56(c)]. Central District Bankruptcy Rule 7056-1, in conjunction with FRCP Section 56(c), provides the procedure by which the bankruptcy court may consider and rule upon a motion for summary judgment.

In this case, there are no genuine issues of material fact, since the parties have stipulated to the facts by way of their Stipulation of Undisputed Facts, recently executed and filed with the Court. And the law is clear that a court hearing a motion for summary judgment can base its decision on stipulations and admissions by counsel or opposing parties during the course of the litigation [In re Durability Inc. (10th Cir. 2000) 212 F3d 551, 555].

The issues presented by this Motion are pure issues of law, and as such, are ripe and proper for determination by this Court at this time.

### B.    M&M and Modtech Entered into a Valid and Enforceable Written Retainer Agreement for the Providing of Legal Services by M&M to Modtech.

Typically, attorneys are entitled to negotiate as they chose the terms on which they will accept employment and, absent issues of duress, unconscionability and the like, the client has no cause to complain that the terms the attorney negotiated were not favorable to him [Ramirez v. Sturdevant (1994) 21 Cal. App. 4th 904, 913, 26 Cal. Rptr. 2nd 554, 558]. The forgoing rule is tempered by California Rules of Professional Conduct, Rule 3-300, which

provides that an agreement that gives a lawyer an interest in the client's property to secure

payment of fees is an adverse interest requiring the lawyer to comply with the following three

requirements:

    (A)    The transaction or acquisition and its terms are fair and reasonable
to the client and are fully disclosed and transmitted in writing to the
client in a manner which should reasonably have been understood
by the client; and

    (B)    The client is advised in writing that the client may seek the advice of an
independent lawyer of the client's choice and is given a reasonable
opportunity to seek that advice; and

    (C)    The client thereafter consents in writing to the terms of the transaction or
the terms of the acquisition.

California Rules of Professional Conduct, Rule 3-300.


    M&M freely admits that by its written Retainer Agreement, it was, in part, obtaining a

lien adverse to Modtech as to the Proceeds of the litigation matters for which it was representing

Modtech, and that it was required to comply with California Rules of Professional Conduct,

Rule 3-300. However, Modtech contends that it has fully complied with CRPC Rule 3-300.

    It has been stipulated by Modtech and Modtech Structures LLC, that M&M and

Modtech entered into a written Retainer Agreement in November, 2004, a copy of which is

attached as Exhibit "A" to the Statement of Uncontroverted Facts and Conclusions of Law

**[Separate Statement of Uncontroverted Facts and Conclusions of Law No. 14]**. This written

agreement met the basic requirements of an offer to provide legal services, the consideration for

the services (money) and an acceptance by Modtech. It was further stipulated that Modtech did

not consider the terms and conditions of this agreement unfair or unreasonable to Modtech

**[Separate Statement of Uncontroverted Facts and Conclusions of Law No. 16]**.  An

authorized representative of Modtech executed the agreement and returned it to M&M after

reviewing it, and after having had the reasonable opportunity to review it with other counsel

**[Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 15 and 17-23]**.

The terms and conditions were fairly disclosed "*in writing*" to Modtech in a manner that should have been understood by Modtech, and that Modtech was advised "*in writing*" that it may seek the advice of an independent counsel **[Separate Statement of Uncontroverted Facts and Conclusions of Law No. 14 and Exhibit "A" thereto]**. Modtech was given a reasonable opportunity to seek the advice of other counsel prior to executing the Retainer Agreement. **[Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 18 and 19]**.

Any suggestion by the opposing parties that for an attorney-client agreement to be valid and in compliance with CRPC Rule 3-300, M&M must have had oral discussions with Modtech prior to entering into the Retainer Agreement explaining the potential effects of the lien, are not supported by the law, and specifically the wording of the statute, which only required that the explanation be "*in writing*". The case of Fletcher v. Davis (2004) Cal 4th 61, 14 Cal. Rptr.3d 58, cited in the defendants First Affirmative Defense within its Answer, is in opposite, because in that case, the California Supreme Court held that the attorney charging lien was barred because "written consent was not obtained" (the attorney in that case only had an oral agreement with his client). The purpose behind the Rule requiring a "writing" is to ensure that the client has notice that the lawyer may detain part of any recovery, and an opportunity to bargain for a different result, and it permits third parties an opportunity to verify the lien's existence and provisions [Fletcher v. Davis, at page 70].

There can be no question but that M&M and Modtech entered into a valid and enforceable agreement for legal services as between the two of them in November, 2004.

    **C.**    **The Written Retainer Agreement Includes a Valid and Enforceable Lien Provision, Providing for a Lien in Favor of M&M Over the Proceeds of Any and All Claims and Causes of Action Which Were the Subject of M&M's Representation of Modtech.**

Modtech contends that its Retainer Agreement includes a valid and enforceable attorney's lien provision in its favor over the proceeds of any and all claims and causes of action which were the subject of M&M's representation of Modtech, inclusive of the four matters for which it has been retained as Special Counsel.

The Retainer Agreement contains a broad and clear statement that claims by

M&M for all attorney's fees and costs are secured by a lien on all proceeds arising from "any

and all claims or causes of action which are the subject of our representation of you pursuant to

this agreement, as well as any and all other claims or causes of action which we may advance

for you in connection with any other matter where we have been retained to act or have acted as

counsel on your behalf." [**Statement of Uncontroverted Facts and Conclusions of Law and

the Stipulation of Undisputed Facts hereto and incorporated herein by reference as

Exhibit "A", page 4, paragraph 2**]. The full text of the granting of the lien within the Retainer

Agreement is as follows:

> "**You hereby grant us a lien on any and all claims or causes of action
> which are the subject of our representation of you pursuant to this
> agreement, as well as any and all other claims or causes of action
> which we may advance for you in connection with any other matter
> where we have been retained to act or have acted as counsel on your
> behalf**.  This lien shall be for the full amount of attorney's fees and costs
> owed to the firm on all matters, regardless of the matter or matters that
> those fees and costs relate to.  This lien will be in addition to any other
> rights we may have to recover sums owing from you under this agreement.
> If you so desire, you may seek the advice of independent counsel of your
> choice with regard to the liens you are granting us hereunder, and we will
> of course give you the time necessary to do so.  By signing this agreement
> you are consenting to the granting of the liens specified herein." [Emphasis
> added]. [**Exhibit "A", Retainer Agreement page 4, paragraph 2**].

This broadly worded provision is clearly written to include all matters over

which M&M performed services on behalf of Modtech, including, but not limited to

those specifically identified within the Retainer Agreement.

State law governs the nature, extent and validity of a lien in bankruptcy

proceedings [Matter of Pacific Far East Line, Inc. (9th Cir. 1981) 654 F.2d 664, 668; In re

Anderson (Bankr. S.D. Ohio 1988) 95 Bankr. 506, 508]. Since this proceeding is taking place

within California, California substantive law should apply. Furthermore, a valid attorney's lien

on a prospective recovery survives the client's bankruptcy [Saltarelli & Steponovich v. Douglas

(1995) 40 Cal. App.4th 1, 5-6, 46 Cal. Rptr.2d 683].

In California, a lien is created by (1) contract of the parties, or (2) by operation of law [California Civil Code Section 2881]. California recognizes a charging lien, which arises out of a contractual agreement between the attorney and his client, where the parties intend the attorney to look to a recovered judgment for attorney's fees [Isrin v. Superior Court (1965) 63 Cal.2d 153, 157, 45 Cal. Rptr. 320][2]. Under California law, an attorney's charging lien may be created by contract even though the attorney's right to fees is not contingent on there being a recovery in litigation, i.e. an hourly fee arrangement [Cetenko v. United California Bank (1982) 30 Cal.3d 528, 532, 179 Cal. Rptr. 902][3].  An attorney's lien does not have to be filed in order for the lien to be created...*It is created and takes effect at the time the fee agreement is executed* [Carroll v. Interstate Brands Corporation (2002) 99 Cal. App.4th 1168, 1172, 121 Cal. Rptr.2d 532; Cetenko, supra at page 534]. The written agreement for an attorney's lien is decisive as to its existence [Haupt v. Charlie's Kosher Market (1941) 17 Cal.2d 843, 845, 112 P.2d 627; Bandy v. Mt. Diablo Unified School District (1976) 56 Cal. App.3d 230, 235, 126 Cal. Rptr. 890].

Under California law, the interpretation of a contract is a question of law [In re Bennett (9th Cir. 2002) 298 F.3d 1059, 1064]. The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties...If contract language is clear and explicit; it governs [In re Bennett at page 1064]. In fact, in California Practice Guide:  Professional Responsibility, the authors provide the following form language to create an attorney's lien in the fee agreement:

> "You hereby grant us a lien as security for the payment of fees and costs due and owing to us under this agreement. This lien will attach to... (any recovery you may obtain, whether by arbitration award, judgment, settlement or otherwise, in this matter; or the property that is the subject of this transaction)..."

---

[2]  The recognition of a "charging lien" has been embraced in Ninth Circuit cases, following California law [In re Pacific Far East Line, supra, at pages 668-669].

[3]  A contract between an attorney and his client providing for the payment of attorney fees as a stated hourly rate upon any recovery in the underlying action resulted in the creation of a valid contractual lien on the proceeds of the judgment [Cetenko, supra, at pages 531-532].

[Vapnek, Tuft, 5 California Practice Guide: Professional Responsibility, Form 5; EE (2006)].

The M&M Retainer Agreement not only uses the word "lien", but indicates M&M may look to the claims and causes of action of Modtech as security for its fees and costs. It was part of the agreement executed by Modtech in November, 2004 (Exhibit "A"), and consequently was created and took effect at that time.

**D.      Upon Entering Into the Written Retainer Agreement in November, 2004, the M&M Lien Became Perfected As to the Proceeds of Any and All Claims and Causes of Action Which Were the Subject of M&M's Representation of Modtech.**

As stated above, California law makes it clear that an attorney's charging lien is effective as soon as the contract that creates it is executed [Cetenko, supra, at page 534]. As a result, no further step is necessary to perfect it or to establish its priority as of the date of execution over subsequently created liens in the same collateral [Carroll, supra, at page 1175]. Thus, an attorney's charging lien is that rare creature: i.e., a legally sanctioned "secret lien" [Cetenko, supra, at page 532-533]. It is perfected, and the security interest created is protected without the filing of a notice of lien [Cetenko, supra, at page 532-533; Carroll, supra, at page 1172]. As a result, the failure to file a notice of lien has no effect on the priority of the attorney's lien over others Cetenko, supra, at page 532-533; In re Bouzas (2003) 294 B.R. 318, 323].   Neither does the failure to file a UCC financing statement[4], since that is nothing more than a notice of lien [Saltarelli, supra, at page 7; Cetenko, supra at page 533, FN5].

Other things being equal, different liens upon the same property have priority according to the time of their creation [California Civil Code Section 2897]. The Retainer Agreement was created and became effective and perfected in November, 2004 over any and all claims and causes of action that M&M was pursuing on behalf of Modtech over subsequently

---

[4]    This is contrary to the blanket assertion of defendants as an affirmative defense, which is without any legal authority and contrary to existing case law.

created liens in the same collateral **[Separate Statement of Uncontroverted Facts and Conclusions of Law No. 14]**. This lien became effective as against Modtech, and as against any others, including subsequent purchasers of the assets of Modtech, i.e. Modtech Structures LLC, given that Modtech Structures LLC accepted the transfer of the purchased Modtech assets from the Laurus group with knowledge of the asserted lien in November, 2009, five years after the creation of the M & M charging lien.

### E.    Proceeds Over Which M&M's Charging Lien Attaches Includes the Heritage High School, JT Plastering and Porter/Kennedy Elementary School Matters.

M&M has provided both pre-petition and post-petition legal representation to Modtech in connection with the Heritage High School, JT Plastering, Monroe Middle School[5] and Porter/Kennedy Elementary School matters **[Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 39 and 40]**. The M&M charging lien, set forth within the Retainer Agreement, specifically attaches to the recovery of any monies in connection with any of these claims, based upon the broad wording of the lien provision, as explained herein above.

### F.    The Parties Agree that M&M Timely Submitted a Proof of Claim, and its Claimed Amount is Reasonable.

The parties have stipulated that M&M prepared and filed a timely Amended Proof of Claim in the pending Modtech bankruptcy proceeding, and, that at the time Modtech filed for bankruptcy protection on October 20, 2008, Modtech owed M&M the reasonable sum of $776,336.39 in legal fees, costs and expert fees for legal services provided, after deducting for fees and costs reimbursed in the meantime through other sources. **[Statement of Uncontroverted Facts and Conclusions of Law Nos. 34, 35 and 42]**

*/////*

---

[5]    This action was recently settled with no monetary recovery to Modtech.

### G.    <u>Public Policy Favors Finding a Priority Charging Lien</u>

Public policy favors the finding of an attorney's charging lien in favor of M&M as against Modtech and all other third parties as to the proceeds of the four litigation matters for which M&M provided legal representation. The reasoning is that if an attorney's claim for a lien on a judgment or otherwise based upon a contract for fees earned prior to and in the action does not prevail over the lien of a subsequent creditor, persons with meritorious claims might well be deprived of legal representation because of their inability to pay legal fees or to assure that such fees will be paid out of the sum recovered in the latest lawsuit."…Such a result would be detrimental not only to prospective litigants, but to their creditors as well…It must be observed that Dr. Cetenko, the client, makes no objection to the use of his judgment to partially satisfy his attorney's several claims…The only objection comes from a stranger to the proceedings, one whose judgment lien was obtained long after the attorney's lien was agreed upon by contract" [<u>Cetenko</u>, <u>Supra</u>, at page 535-536].

Under our facts, M&M's attorney charging lien arose in November, 2004, years before the sale of certain Modtech assets to the Laurus Group (who transferred them to Modtech Structures LLC), who accepted the transfer of the purchased assets with knowledge of the charging lien. Furthermore, Modtech has no issue with M&M's lien or the sums it is seeking to collect from the four pending actions. Public policy, along with the substantive law, calls for this Court to find the lien of M&M to be perfected and a priority over all other claims to the litigation proceeds.

## IV.

## CONCLUSION

Based upon the forgoing, the concurrently filed Statement of Uncontroverted Facts and Conclusions of Law, and the Stipulation of Undisputed Facts on file, M&M respectfully requests this Court to grant its requested relief and issue an Order, and subsequent Judgment finding that M&M holds a valid, first priority secured interest in litigation proceeds paid, or to

be paid, to the Debtor arising from the Heritage High School, JT Plastering and Porter/Kennedy

Elementary Schools matters, in which M&M was pre-petition and Special Counsel to the

Debtor, up to the amount of its revised pre-petition claim of $776,336.39.


Dated:  December 28, 2009          CLARKSON, GORE & MARSELLA, APLC


By:

Scott C. Clarkson, Esq.
Eve A. Marsella, Esq.
Attorneys for plaintiff Monteleone & McCrory
LLP

| In re: | | CHAPTER: 11 |
| | MODTECH HOLDING, IN., | ADV. NUMBER: 6:09-ap-01268-TD |
| | Debtor(s). | CASE NUMBER: 6:08-bk-24324-TD |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
3424 Carson Street, Suite 350, Torrance, CA  90503

The foregoing document described <u>Monteleone & McCrory LLP's Motion for Summary Judgment; Memorandum of Points and Authorities in Support Thereof [Separate Statement of Uncontroverted Facts and Conclusions of Law Filed Concurrently Herewith</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>December 28, 2009</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

**Counsel for Modtech Structures LLC (Defendant)**
James K T Hunter    jhunter@pszyjw.com

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On <u>December 28, 2009</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**Judge**
Honorable Thomas B. Donovan
255 East Temple Street, Suite 1352
Los Angeles, CA  90012

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 28, 2009 | Michelle A. Carpenter | |
| --- | --- | --- |
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:                            |              | CHAPTER: 11 |
|-----------------------------------|--------------|-------------|
|           MODTECH HOLDING, IN.,   |              | ADV. NUMBER: 6:09-ap-01268-TD |
|                                   | Debtor(s).   | CASE NUMBER: 6:08-bk-24324-TD |

**BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

### Counsel for Modtech Holdings, Inc. (Defendant)
Charles Liu    cliu@winthropcouchot.com
Marc J Winthrop    pj@winthropcouchot.com

### U.S. Trustee
United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                   **F 9013-3.1**