1  SCOTT C. CLARKSON, ESQ.  SBN 143271
   EVE A. MARSELLA, ESQ.  SBN 165797
2  CLARKSON, GORE & MARSELLA
   A PROFESSIONAL LAW CORPORATION
3  3424 Carson Street, Suite 350
   Torrance, California 90503
4  (310) 542-0111 Telephone
   (310) 214-7254 Facsimile
5
6  Counsel to plaintiff Monteleone & McCrory LLP

7

8              UNITED STATES BANKRUPTCY COURT

9      CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

10

11 In re                              ) Case No. 6:08-bk-24324-TD
                                      ) Chapter 11
12 MODTECH HOLDINGS, INC.,            )
                                      ) Adv. Case No. 6:09-ap-01268-TD
13        Debtor and Debtor in Possession. )
                                      ) **MONTELEONE & MCCRORY LLP'S**
14 _____ ) **OPPOSITION TO MOTION FOR**
                                      ) **SUMMARY JUDGMENT OF MODTECH**
15                                    ) **STRUCTURES LLC; MEMORANDUM**
   MONTELEONE & McCRORY, LLP,         ) **OF POINTS AND AUTHORITIES IN**
16                                    ) **SUPPORT THEREOF**
          Plaintiff,                  )
17                                    ) **[SEPARATE STATEMENT OF**
   v.                                 ) **UNCONTROVERTED FACTS AND**
18                                    ) **CONCLUSIONS OF LAW FILED WITH**
                                      ) **M&M SUMMARY JUDGMENT PAPERS]**
19 MODTECH HOLDINGS, INC., and        )
   MODTECH STRUCTURES LLC,            )
20                                    ) **Live Hearing:**
                                      ) **DATE:    January 28, 2010**
21        Defendants.                 ) **TIME:    10:00 a.m.**
                                      ) **PLACE:  Courtroom 1345**
22 _____ )         **225 E. Temple Street**
                                               **Los Angeles, CA 90012**
23
                                      -and-
24
                                      **Via Video Conference:**
25                                    **DATE:    January 28, 2010**
                                      **TIME:    10:00 a.m.**
26                                    **PLACE:  Courtroom 303**
                                              **3420 Twelfth Street**
27                                            **Riverside, CA 92501**

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ................................................................................2

II.   STATEMENT OF RELEVANT AND UNDISPUTED FACTS ......................................3

III.  ARGUMENT ...................................................................................6

    A    The Parties Have Stipulated that M&M Fully Complied with the
        Requirements of Rule 3-300.  M&M is not Required to Prove Anything
        Else to Validate its Charging Lien ........................................................6

    B.   M&M was not Required to Comply with the California Commercial
        Code under any Circumstances, Including the Filing of a UCC-1 Financing
        Statement with the Secretary of State, In Order to Perfect Its Attorney Lien........8

        1.   State Law of the Highest Court Within the State is to be Applied in
            Determining the Validity of an Attorney's Lien ............................................10

        2.   M&M's Attorney Lien was a Charging Lien that Arose and was
            Perfected at the Time of Execution of the Written Retainer Agreement .......11

        3.   The California Supreme Court has Ruled that an Attorney Need Not
            File a UCC-1 in Order to Perfect Its Attorney Lien as to Related and
            Unrelated Legal Services ...............................................................12

        4.   The Cases Cited by Defendant MSL in Support of Their Motion are
            Either Not Precedent, Inapplicable, Misinterpret the Underlying Case
            to Which They Reference, or are Dicta and DO Not Supplant or Alter
            the Holding in Cetenko ................................................................14

IV.   CONCLUSION ................................................................................15

TABLE OF AUTHORITIES

Page(s)

**Cases**

Bandy v. Mt. Diablo Unified School District
    (1976) 56 Cal.App.3d 230, 235, 126 Cal. Rptr. 890 ........................................ 11

Bluxome Street Associates v. Woods
    (1988) 206 Cal.App.3d 1149 ................................................................ 14

Carroll v. Interstate Brands Corporation
    (2002) 99 Cal. App.4th 1168, 1172, 121 Cal. Rptr.2d 532 ........................ 11, 12

Cetenko v. United California Bank
    (1982) 30 Cal.3d 528, 179 Cal. Rptr. 902 .............................. 10, 11, 12, 13, 14

Fletcher v. Davis
    (2004) 33 Cal.4th 61, 14 Cal. Rptr.3d 58 ...................................... 6, 8, 9

Haupt v. Charlie's Kosher Market
    (1941) 17 Cal.2d 843, 845, 112 P.2d 627 .................................... 10, 11

In re Bouzas
    (2003) 294 B.R. 318, 323 ........................................................ 12

In re Croshier
    (1998) 228 B.R. 468 ........................................................ 14, 15

In re Kirkland
    (9th Cir. BAP 1988) 91 B.R. 551 ............................................ 10

In re Segovia
    387 B.R. 773 (Bkrtcy. N.D. Cal. 2008) ...................................... 8, 9

In re Southern California Plastics, Inc.
    (9th Cir. BAP 1997) 208 B.R. 178 ............................................ 10,

Isrin v. Superior Court
    (1965) 63 Cal.2d 153, 157, 45 Cal. Rptr. 320 ................................ 11

Mayhew v. Benninghoff
    (1997) 53 Cal.App.4th 1365 ................................................ 8

In re Pacific Far East Line
    (9th Cir. 1981) 654 F.2d 664............................................................................11

Mckee v. National Union Fire Insurance Co.
    (1993) 15 Cal.App.4th 282 ............................................................................14

Pacific Gas & Electric Co. v. Nakano
    (1939) 12 Cal. 2d 711 ...................................................................................14

Roberts v. Wachter
    (1951) 104 Cal.App.2d 271............................................................................8

Saltarelli & Steponovich v. Douglas
    (1995) 40 Cal. App.4th 1, 46 Cal. Rptr.2d 683 ...............................................12

**Statutes**

California Civil Code

    Section 2881.................................................................................11, 12, 15, 16

    Section 2897...........................................................................................12

California Rules of Professional Conduct

    Rule 3-300.............................................................................................2, 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiff Monteleone & McCrory, LLP ("M&M") hereby opposes the Motion for Summary Judgment of Defendant Modtech Structures, LLC (the "MSL Motion"). The MSL Motion is set to be heard concurrently with the Motion for Summary Judgment filed by M&M (the "M&M Motion") concerning the same issues. As a result, much of the case law supporting the position of M&M in opposition to the MSL Motion is already discussed in the M&M Motion. Accordingly, M&M requests that, in addition to the points and authorities set forth in this opposition brief, the Court consider the points and authorities and evidence submitted in the M&M Motion.

Within the M&M Motion, M&M contends that the written retainer agreement entered into with Modtech in November, 2004, contains a valid, perfected and enforceable attorney's charging lien, first in priority, not only as against Modtech, but also as against third parties, including, but not limited to Modtech Structures LLC (hereinafter "MSL"), over litigation proceeds obtained from the Heritage High School, JT Plastering, Monroe Middle School and Porter/Kennedy Elementary School matters, up to the full amount of its claim of $776,336.39. By its separate Motion, M&M seeks an Order and Judgment of this Court finding this to be the case.

By its Motion, MSL, a stranger to the underlying Modtech litigation, seeks to have this Court set aside the attorney's charging lien of M&M on two grounds. First, MSL argues that the M&M lien is invalid because M&M purportedly did not comply with Rule 3-300 of the California Rules of Professional Conduct. This argument must fail because, among other things: (1) MSL has stipulated and acknowledged that M&M fully complied with all of the express requirements of Rule 3-300, and (2) MSL has presented absolutely no evidence suggesting that anything more is required to create the lien.

Second, Modtech Structures argues the Lien was not "properly perfected" because M&M did not file a UCC financing statement with the California Secretary of State. This argument must also fail because, among other things: (a) Modtech Structures does not, and cannot, point to a single California authority for the proposition that attorneys must file UCC financing statements to perfect their charging liens, and (b) several California cases expressly hold that charging liens are perfected at the time a retainer agreement is signed by the client and no further steps are necessary.

M&M respectfully requests that the Court reject the overreaching, unsupported arguments of MSL. M&M further requests that the Court deny the MSL Motion in its entirety while, at the same time, granting the M&M Motion in its entirety.

# II.

## STATEMENT OF RELEVANT AND UNDISPUTED FACTS

As of November 1, 2004, and throughout 2005, Ron Savona ("Savona") was the Chief Operating Officer of Modtech. After leaving the position of COO, Savona became Executive Vice President of Modtech, and held that position up to the date of Modtech's bankruptcy filing on October 20, 2008 **[Plaintiff's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 1 and 2]**.

Modtech was a publicly held company and a Delaware Corporation, authorized to do business in California, during all of 2004 and 2005 **[Plaintiff's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 3, 4 and 5]**.

At some point in time in the fall of 2004, Savona made the decision that Modtech needed to retain legal counsel to assist it in connection with certain pending construction projects. The initial projects for which Savona believed Modtech needed legal counsel included what have been called the Heritage High School and Monroe Middle School Projects. At some point in time in the fall of 2004, Savona also came to the conclusion that Modtech needed to retain legal counsel to assist it with a variety of legal issues and/or matters, including, but not

limited to contract and construction related issues **[Plaintiff's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 6, 7 and 8]**.

In early November, 2004, Savona and others at Modtech met with Pat Duffy ("Duffy"), a partner at the M&M law firm, at Modtech's offices in Perris, California for purposes of discussing certain legal matters and retaining M&M. Savona and Duffy discussed the Heritage High School and Monroe Middle School projects, among other things. At the November, 2004 meeting at Modtech's offices, Savona retained M&M to represent Modtech. It was at this same meeting that Duffy advised Savona that his firm would require that the company execute a written retainer agreement with the firm, that he would send Savona the proposed retainer agreement for his review, and that if he had any questions about it, he should contact Duffy **[Plaintiff's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 9 through 13]**.

Exhibit "A", attached to the concurrently filed M&M Separate Statement of Uncontroverted Facts and Conclusions of Law and the Stipulation of Undisputed Facts, is a true and correct copy of the November 12, 2004 written retainer agreement entered into between Modtech and M&M for the provision of legal services by the firm. Savona executed the Retainer Agreement as COO of Modtech in November, 2004, after first reviewing it. Modtech believed the terms and conditions contained within the Retainer Agreement were fair and reasonable. Savona was given a reasonable period of time to review the Retainer Agreement, and to consult with other counsel of his choosing regarding the terms and conditions. Savona chose not to consult with another lawyer regarding the terms and conditions, and did not have any questions about the terms or conditions contained within the Retainer Agreement **[Plaintiff's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 14 through 20]**.

By executing the Retainer Agreement, Savona understood that Modtech was agreeing to compensate M&M on an hourly basis for the services provided by its lawyers, paralegals and consultants, along with their reasonable costs and expenses. At the time of executing the Retainer Agreement, Savona had the authority of Modtech to do so. After executing the

Retainer Agreement, Savona returned the executed agreement to M&M **[Plaintiff's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 21, 22 and 23]**.

Between November, 2004 and October 19, 2008, M&M provided legal services to Modtech on a number of legal matters, some as a plaintiff, and some as a defendant, and still others in a quasi-general counsel role. While Modtech paid for some of these legal services over the years, a significant balance of unpaid legal invoices had accrued as of October 20, 2008, the date of the Petition. As of the filing, Modtech owed M&M the sum of $776,336.39 on a wide variety of matters, some *"related"* to the actions that M&M would continue to pursue on behalf of Modtech, but most were *"unrelated"* to the continuing litigation **[Plaintiff's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 32, 33 and 34]**.

Laurus recently purchased certain assets of Modtech, which they contend includes any and all proceeds from the four litigation matters identified herein below, subject to a determination by this Court as to the validity and enforceability of M&M's attorney's lien **[Plaintiff's Separate Statement of Uncontroverted Facts and Conclusions of Law No. 47]**. Laurus assigned and transferred its rights in the Modtech purchased assets to Modtech Structures LLC **[Plaintiff's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 45, 46 and 48]**.

Subsequent to October 20, 2008 and after being retained as Special Counsel for Modtech, M&M has recovered certain monies in connection with the JT Plastering and Heritage High School matters, in the respective sums of $46,519.66, and $313,728.35, after deducting for court-ordered/agreed upon fees and costs. The monies recovered on behalf of Modtech by M&M in connection with the JT Plastering and Heritage High School matters have been placed in a blocked DIP account maintained by Modtech, and identified as "Modtech Litigation Fund Account" maintained at U S Bank as "ABA #122-235-821". The sole remaining action for which M&M continues to represent Modtech is the Porter/Kennedy Elementary Schools matter, has recently settled, and is in the process of being documented and presented to this Court for approval within the next thirty days **[Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 42 and 43]**.

## III.

## ARGUMENT

**A.    THE PARTIES HAVE STIPULATED THAT M&M FULLY COMPLIED WITH THE REQUIREMENTS OF RULE 3-300.  M&M IS NOT REQUIRED TO PROVE ANYTHING ELSE TO VALIDATE ITS CHARGING LIEN**

In the MSL Motion, MSL admits that the facts stipulated to by the parties demonstrate that M&M complied with all of the requirements of Rule 3-300. (See MSL Motion at 6:21-22).  This is all that is required under California law to establish the validity of a charging lien.  Fletcher v. Davis (2004) 33 Cal.4th 61, 14 Cal.Rptr.3d 58 ("We therefore conclude that an attorney who secures payment . . . by acquiring a charging lien . . . must comply with the requirements of Rule 3-300.").

M&M freely admits that by its written Retainer Agreement, it was, in part, obtaining a lien adverse to Modtech as to the Proceeds of the litigation matters for which it was representing Modtech, and that it was required to comply with California Rules of Professional Conduct, Rule 3-300. However, Modtech contends that it has fully complied with CRPC Rule 3-300. This Rule requires that:

(A)    The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted **in writing** to the client in a manner which should reasonably have been understood by the client; and

(B)    The client is advised **in writing** that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and

(C)    The client thereafter consents **in writing** to the terms of the transaction or the terms of the acquisition.
[Emphasis Added].

It has been stipulated by Modtech and MSL, that M&M and Modtech entered into a written Retainer Agreement in November, 2004, a copy of which is attached as Exhibit "A" to the Statement of Uncontroverted Facts and Conclusions of Law **[Plaintiff's Separate Statement of Uncontroverted Facts and Conclusions of Law No. 14]**. And that the written

agreement met the requirements of Rule 3-300 **[Plaintiff's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 14-23]**. It was further stipulated that Modtech did not consider the terms and conditions of this agreement unfair or unreasonable to Modtech **[Plaintiff's Separate Statement of Uncontroverted Facts and Conclusions of Law No. 16]**. An authorized representative of Modtech executed the agreement and returned it to M&M after reviewing it, and after having had the reasonable opportunity to review it with other counsel **[Plaintiff's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 15 and 17-23]**. The terms and conditions were fairly disclosed "**in writing**" to Modtech in a manner that should have been understood by Modtech, and that Modtech was advised "**in writing**" that it may seek the advice of an independent counsel **[Plaintiff's Separate Statement of Uncontroverted Facts and Conclusions of Law No. 14 and Exhibit "A" thereto]**. Modtech was given a reasonable opportunity to seek the advice of other counsel prior to executing the Retainer Agreement **[Plaintiff's Separate Statement of Uncontroverted Facts and Conclusions of Law Nos. 18 and 19]**.

The Retainer Agreement contains a broad and clear statement that claims by M&M for all attorney's fees and costs are secured by a lien on all proceeds arising from "any and all claims or causes of action which are the subject of our representation of you pursuant to this agreement, as well as any and all other claims or causes of action which we may advance for you in connection with any other matter where we have been retained to act or have acted as counsel on your behalf." **[Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law and the Stipulation of Undisputed Facts hereto and incorporated herein by reference as Exhibit "A", page 4, paragraph 2]**. The full text of the granting of the lien within the Retainer Agreement is as follows:

> "**You hereby grant us a lien on any and all claims or causes of action which are the subject of our representation of you pursuant to this agreement, as well as any and all other claims or causes of action which we may advance for you in connection with any other matter where we have been retained to act or have acted as counsel on your behalf**. This lien shall be for the full amount of attorney's fees and costs owed to the firm on all

matters, regardless of the matter or matters that those fees and costs relate to.  This lien will be in addition to any other rights we may have to recover sums owing from you under this agreement. If you so desire, you may seek the advice of independent counsel of your choice with regard to the liens you are granting us hereunder, and we will of course give you the time necessary to do so.  By signing this agreement you are consenting to the granting of the liens specified herein." [Emphasis added]. **[Exhibit "A", Retainer Agreement page 4, paragraph 2].**

By way of the forgoing clear and unambiguous language, M&M has met the requirements of the statute, and no more is required.

In its motion, MSL cites extensively from Fletcher, supra and In re Segovia 387 B.R. 773 (Bkrtcy. N.D. Cal. 2008) for its proposition that M&M must prove the charging lien provision was discussed orally by the parties before the Retainer Agreement was signed by Modtech.[1]  This position is not supported by the law, and specifically the wording of the statute, which only required that the explanation be "**in writing**".

The case of Fletcher, supra, cited within defendant MSL's moving papers at pages 4:21-5:24, is in opposite, because in that case, the California Supreme Court held that the attorney charging lien was barred solely because "**written consent was not obtained**" (the attorney in that case only had an oral agreement with his client). The purpose behind the Rule requiring a "writing" is to ensure that the client has notice that the lawyer may detain part of any recovery, and an opportunity to bargain for a different result, and it permits third parties an opportunity to verify the lien's existence and provisions [Fletcher, supra at page 70]. MSL highlights dicta from the decision that indicates informed written consent is required and that the transaction must be explained fully.  (See MSL Motion at 5:10-13 and 18).  Nothing in the decision indicates the charging lien provision must be discussed orally with the client.  Nothing

---

[1] MSL also cites dicta from Mayhew v. Benninghoff (1997) 53 Cal.App.4th 1365 and Roberts v. Wachter (1951) 104 Cal.App.2d 271 in its motion.  Neither of these cases provides any additional guidance.  Mayhew concerned an attorney's attempt to use an arbitration provision set forth in an engagement letter to compel arbitration in an unrelated business dispute with his client.  Id. at 1367-1368.  The attorney had failed to advise his client of the right to seek independent legal advice.  Id. at 1370.  Roberts is inapplicable because the case does not involve an attorney charging lien and does not make any mention of Rule 3-300.

in the decision indicates the impact of the charging lien provision cannot be explained fully in

the body of the retainer agreement.  Here, Modtech read and understood the admittedly

reasonable terms of the Retainer Agreement.  MSL admits that M&M fully complied with Rule

3-300.  This is all that is required by Fletcher.

In In re Segovia, the court was asked to determine whether a lien placed on the

real property of a client was valid and enforceable.  In ruling that the parties' retainer agreement

did not create an enforceable lien, the court concluded the retainer agreement did not adequately

describe the real property to be encumbered by the lien.  Because the lien was, in essence, a

mortgage, the court concluded the retainer agreement needed to comply with the standards

applicable to grants of real property.  Id. at 784.  The Court also pointed out that the attorney did

not explain the impact of the lien provision either orally or in writing in violation of Rule 3-300.

Quite clearly, the facts of In re Segovia are easily distinguished from those

present in this case.  Here, the parties have stipulated that M&M complied with the

requirements of Rule 3-300.  The charging lien of M&M did not create an interest in real

property.  The charging lien and its impact were fully explained in writing in the Retainer

Agreement.  And most importantly, the court never states an oral explanation is required in

addition to compliance with the express provisions of Rule 3-300.

Contrary to the position of MSL, these cases do not create an additional

requirement in addition to those set forth in Rule 3-300.  Instead, these cases simply reiterate

that attorneys must comply with Rule 3-300 in order to enforce their charging liens, and M&M

did so.

**B.     M&M WAS NOT REQUIRED TO COMPLY WITH THE CALIFORNIA
COMMERCIAL CODE UNDER ANY CIRCUMSTANCES, INCLUDING
THE FILING OF A UCC-1 FINANCING STATEMENT WITH THE
SECRETARY OF STATE, IN ORDER TO PERFECT ITS ATTORNEY
LIEN**

Defendant MSL has taken the position that since M&M did not file with the

California Secretary of State a UCC-1 Financing Statement, M&M's attorney lien at best, and

1  assuming the attorney's lien is not void <u>ab initio</u>, is **only** enforceable to secure payment for the

2  legal services incurred in the action resulting in the settlement proceeds ("related fees and

3  costs"), and does not allow such a charging lien to secure "unrelated fees and costs" (for other

4  legal services provided by M&M on other Modtech matters), citing this Court to the cases of

5  <u>Centenko v. United California Bank</u> (1982) 30 Cal.3d 528, 179 Cal. Rptr. 902, and <u>Haupt v.</u>

6  <u>Charlie's Kosher Market</u> (1941) 17 Cal.2d 843, 112 P.2d 627.  Defendant MSL then goes on to

7  point out that M&M in this proceeding is seeking the recovery of legal fees and costs, much of

8  which pertain to "unrelated" (or other Modtech matters for which payment had not been

9  received by M&M), and argues that, as such, M&M is entitled to an attorney's charging lien for

10  approximately $11,000 of its claimed $776,000 in fees and costs.

11       For those reasons asserted herein below, this position is not supported by the

12  law, and, it is M&M's contrary contention, as supported by the law, that its attorney lien was

13  perfected at the time of entering into the written Retainer Agreement in November, 2004, years

14  before MSL or its predecessors ever became creditors of Modtech.

15  **1.    State Law of the Highest Court Within the State is to be Applied in**
16  **Determining the Validity of an Attorney's Lien**

17       In determining the validity of an attorney's lien, or any lien for that

18  matter, the bankruptcy courts must apply state law [<u>In re Southern California Plastics, Inc.</u> (9th

19  Cir. BAP 1997) 208 B.R. 178]. Bankruptcy courts must also look first to the decisions of the

20  state supreme court, and in the absence of a supreme court decision, they must follow a decision

21  of an intermediate appellate court absent convincing evidence the highest court of the state

22  would decide differently [<u>In re Kirkland</u> (9th Cir. BAP 1988) 91 B.R. 551].

23       As discussed herein below in detail, a California Supreme Court decision

24  does exist, and which is precedent, that addresses the issue of perfection and the <u>California</u>

25  <u>Commercial Code</u> in relationship to attorney's liens in the action entitled <u>Cetenko v. United</u>

26  <u>California Bank, supra</u>. M&M contends that the holding by the Supreme Court in <u>Cetenko</u>

27  supports the position of M&M in favor of finding its attorney's lien valid, enforceable, and in

28

first position as to those funds M&M has secured and collected on behalf of Modtech, as

described within its separately filed Motion for Summary Judgment.

### 2.    M&M's Attorney Lien was a Charging Lien that Arose and was Perfected at the Time of Execution of the Written Retainer Agreement

In California, a lien is created by (1) contract of the parties, or (2) by

operation of law [California Civil Code Section 2881]. California recognizes a charging lien,

which arises out of a contractual agreement between the attorney and his client, where the

parties intend the attorney to look to a recovered judgment for attorney's fees [Isrin v. Superior

Court (1965) 63 Cal.2d 153, 157, 45 Cal. Rptr. 320][1]. Under California law, an attorney's

charging lien may be created by contract even though the attorney's right to fees is not

contingent on there being a recovery in litigation, i.e. an hourly fee arrangement [Cetenko v.

United California Bank (1982) 30 Cal.3d 528, 532, 179 Cal. Rptr. 902][2]. An attorney's lien

does not have to be filed in order for the lien to be created...*It is created and takes effect at the

time the fee agreement is executed* [Carroll v. Interstate Brands Corporation (2002) 99 Cal.

App.4th 1168, 1172, 121 Cal. Rptr.2d 532; Cetenko, supra at page 534]. The written agreement

for an attorney's lien is decisive as to its existence [Haupt v. Charlie's Kosher Market (1941) 17

Cal.2d 843, 845, 112 P.2d 627; Bandy v. Mt. Diablo Unified School District (1976) 56 Cal.

App.3d 230, 235, 126 Cal. Rptr. 890]. In this case, the parties have stipulated that a written

Retainer Agreement was entered into between the parties in November, 2004, and M&M would

further argue that it arose and became an attorney charging lien at that time as well.

Because California law makes it clear that an attorney's charging lien is

effective as soon as the contract that creates it is executed, no further step is necessary to perfect

it or to establish its priority as of the date of execution over subsequently created liens in the

---

[1]    The recognition of a "charging lien" has been embraced in Ninth Circuit cases, following California law [In re Pacific Far East Line (9th Cir. 1981) 654 F.2d 664, 668-669].

[2]    A contract between an attorney and his client providing for the payment of attorney fees as a stated hourly rate upon any recovery in the underlying action resulted in the creation of a valid contractual lien on the proceeds of the judgment [Cetenko, supra, at pages 531-532].

same collateral [Cetenko, supra, at pages 534-536; Carroll, supra, at page 1175]. Thus, an attorney's charging lien is that rare creature: i.e., a legally sanctioned "secret lien" [Cetenko, supra, at page 532-533]. It is perfected, and the security interest created is protected without the filing of a notice of lien [Cetenko, supra, at page 532-533; Carroll, supra, at page 1172]. As a result, the failure to file a notice of lien has no effect on the priority of the attorney's lien over others Cetenko, supra, at page 532-533; In re Bouzas (2003) 294 B.R. 318, 323]. Neither does the failure to file a UCC financing statement[3], since that is nothing more than a notice of lien, and "superfluous" to the creation of a valid lien under California Civil Code Section 2881 [Saltarelli & Steponovich v. Douglas (1995) 40 Ca.App.4th 1, 46 Cal.Rptr.2d 683; Cetenko, supra at page 533, FN5].

Other things being equal, different liens upon the same property have priority according to the time of their creation [California Civil Code Section 2897]. The Retainer Agreement was created and became effective and perfected in November, 2004 over any and all claims and causes of action that M&M was pursuing on behalf of Modtech over subsequently created liens in the same collateral **[Plaintiff's Separate Statement of Uncontroverted Facts and Conclusions of Law No. 14]**. This lien became effective as against Modtech, and as against any others, including subsequent purchasers of the assets of Modtech, i.e. Modtech Structures LLC, given that Modtech Structures LLC accepted the transfer of the purchased Modtech assets from the Laurus group with knowledge of the asserted lien in November, 2009, five years after the creation of the M&M charging lien.

3. **The California Supreme Court has Ruled that an Attorney Need Not File a UCC-1 in Order to Perfect Its Attorney Lien as to Related and Unrelated Legal Services**

In the 1982 holding of Cetenko v. United California Bank, cited supra, the California Supreme Court was presented with a claim by an attorney asserting that his attorney's lien had priority over a subsequent judgment creditor claim. In that case, the attorney

---

[3] This is contrary to the blanket assertion of defendants as an affirmative defense, which is without any legal authority and contrary to existing case law.

had provided representation to his client, Cetenko, in an action to establish ownership of a parcel of real property, **and on a number of other litigation matters ("unrelated" legal matters)**, based upon an hourly rate written fee agreement entered into in 1976. The agreement provided that unpaid fees owed by Cetenko would become a lien upon any recovery in the action. A third party, Schaefer, had loaned $8,000 to Cetenko, secured by a promissory note in that same year. After failing to repay the note, Schaefer filed suit and a judgment was entered in her favor in March, 1977. In the real property action, Cetenko, through the services of his counsel, recovered $31,848.28 in the action, which was deposited in the court. The attorney, Schwartz, then filed a motion seeking the release of the entire proceeds to him **as payment for services rendered in this and several other matters**. The trial court granted Schwartz's motion, but required that he deposit the $8,000 in a bank account until the matter could be resolved. Schaefer, the third party, appealed the Order.

        The Supreme Court, reviewing the facts of the matter, found that a valid lien arose at the time of execution of the written retainer agreement, that the agreement was fair and reasonable, and that the lien could be based upon an hourly fee arrangement (<u>Supra</u>, at pages 531-532). The Court went on further to hold that an attorney's lien is in the form of a "secret lien", and does not require notice in order to be effective (<u>Supra</u>, at pages 532-533), and enforceable and a priority to a later recorded judgment lien, disregarding any argument pertaining to notice, inclusive of the filing of a UCC-1 (<u>Supra</u>, at pages 533-535). Most important to our inquiry, the Supreme Court specifically held that:

> "Public policy favors the conclusion we reach in this case…If an attorney's claim for a lien on the judgment based on a contract **for fees earned prior to and in the action** cannot prevail over the lien of a subsequent judgment creditor, persons with meritorious claims might well be deprived of legal representation because of their inability to pay legal fees or to assure that such fees will be paid out of the sum recovered **in the latest lawsuit**…Such a result would be detrimental not only to prospective litigants, but to their creditors as well…It must be observed that Dr. Cetenko, the client, makes no objection to the use of his judgment **to partially satisfy his attorney's several claims**…The only objection comes from a stranger to the proceedings, one whose judgment lien was obtained long after the attorney's lien was agreed upon by contract" [<u>Cetenko</u>, <u>Supra</u>, at page 535-536] [Emphasis added].

The holding by the Supreme Court in <u>Cetenko</u> has not been overturned, and is the current authority as to the issues of notice, "related and unrelated fees and costs", and the applicability of the <u>California Commercial Code</u> to attorney liens.

The facts of our case are not dissimilar to the facts of <u>Cetenko</u>, in that M&M entered into a written retainer agreement on an hourly basis, provided legal services for Modtech on a number of matters, only a portion of which M&M was able to obtain a monetary recovery, leaving a sizable unpaid balance due to M&M. In Cetenko, the court allowed the attorney's lien to stand as a priority to a later lien, **for both "related" and "unrelated" fees and costs** (contrary to the assertions set forth within MSL's papers), and similarly, M&M's attorney lien should be granted priority over Modtech and MSL as to the litigation proceeds.

**4.    The Cases Cited by Defendant MSL in Support of Their Motion are Either Not Precedent, Inapplicable, Misinterpret the Underlying Case to Which they Reference, or are Dicta and Do Not Supplant or Alter the Holding in Cetenko**

Defendant MSL has identified a number of cases purportedly in support of its position that M&M was obligated to file a UCC-1 Financing Statement in order to perfect its attorney's lien rights as against MSL. These cases include: <u>In Re Croshier</u> (1998) 228 B.R. 468, <u>Pacific Gas & Electric Co. v. Nakano</u> (1939) 12 Cal. 2d 711, <u>Mckee v. National Union Fire Insurance Co.</u> (1993) 15 Cal. App.4<sup>th</sup>282, <u>Bluxome Street Associates v. Woods</u> (1988) 206 Cal. App.3d 1149,  and <u>Cetenko v. United California Bank</u>, <u>Supra</u>. As discussed below, each of these cases is easily distinguishable on the grounds that it is either (1) not precedent, (2) inapplicable, (3) misinterpret the underlying case to which it references, or (4) is merely dicta, and should not be followed by this Court.

In re Croshier, <u>Supra</u>, referenced extensively by defendant MSL, the bankruptcy court, hearing an adversarial proceeding involving the claim of a woman who lent $138,000 to a debtor in consideration of a written assignment of a tort cause of action in advance of judgment (and who was seeking priority of her claim), ruled that the tort cause of action was not assignable, relying upon the holdings in similar tort assignment cases including <u>Pacific Gas</u> and <u>McKee</u>. **None of these three cases involved an attorney's lien and all involve**

**the attempted assignment of a tort cause of action**, and the only tangential reference is that the court took it upon itself, in dicta within the opinion, to reference the exception from the California Commercial Code for attorney's liens (at page 472), citing Cetenko and another case. **Within the dicta, the bankruptcy court misinterpreted the holding in Cetenko, as does defendant MSL within its papers**, to limit the exception to the California Commercial Code to attorney's liens pertaining to "related fees and costs", contrary to the actual ruling of the California Supreme Court, which provided no such limitation on attorney's liens (as set forth herein above). In accordance with the law, the holding in Cetenko, and not the Croshier court's interpretation of Cetenko, is the precedent to be followed by this Court.

      Similarly, in Bluxome, the First District Court of Appeal held an attorney's contractual charging lien enforceable and in first position ahead of several junior liens, based heavily upon the holding in Cetenko. In Bluxome, the client, Woods, granted a security interest in writing to his attorneys, Flynn & Stewart, in an action entitled Woods v. Neisar and any proceeds thereof to secure payment of past and future legal fees and costs. The court found that the written agreement created an enforceable contractual lien pursuant to California Civil Code Section 2881. Ultimately, a judgment was entered in favor of Woods in the Woods v. Neisar action, and a dispute arose over the priority of liens, including the attorney's lien of Flynn & Stewart. The court recognized that the Flynn & Stewart lien was not an equitable lien, but an express contractual lien, valid and enforceable under California Civil Code Section 2881 (at pages 1153-1154), and noted that in Cetenko, the court allowed the lien "as payment for services rendered in this and several other matters" (at page 1155), and in fact emphasized this by stating **"Further, and significant to our case, the court did not find that that the fees incurred for matters unrelated to the action were not properly secured by the lien."** The Croshier court and defendant MSL misinterpret Bluxome by contending that it allowed for the priority of the attorney's lien over "unrelated fees and costs" in that case solely because the California Commercial Code did not apply to tort claims, and there was no other notice required to perfect an attorney's lien (suggesting that in a contract claim setting, the UCC-1 filing would have been required for "unrelated fees and costs"), despite the Bluxome

court's unambiguous statement at page 1156 that the attorney lien was valid and enforceable under <u>California Civil Code</u> Section 2881, and that the filing of a UCC-1 Financing Statement, like in <u>Cetenko</u>, was "superfluous" to the creation of a valid lien.

## IV.

## CONCLUSION

Based upon the forgoing, the previously filed M&M Statement of Uncontroverted Facts and Conclusions of Law, the Stipulation of Undisputed Facts on file, and the M&M Motion for Summary Judgment, M&M respectfully requests this Court to deny defendant MSL's requested relief and issue an Order denying the MSL Motion in whole, as a matter of law.

Dated:  January 14, 2010                    CLARKSON, GORE & MARSELLA, APLC

By: _____
    Scott C. Clarkson, Esq.
    Eve A. Marsella, Esq.
    Attorneys for plaintiff Monteleone & McCrory
    LLP

16

| In re:                                  | CHAPTER: 11 |
|                  MODTECH HOLDING, IN.,  | ADV. NUMBER: 6:09-ap-01268-TD |
|                          Debtor(s).     | CASE NUMBER: 6:08-bk-24324-TD |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

3424 Carson Street, Suite 350,Torrance, CA  90503

The foregoing document described Monteleone & McCrory LLP's Opposition to Motion for Summary Judgment of Modtech Structures LLP; Memorandum of Points and Authorities in Support Thereof will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On January 14, 2010 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

**Counsel for Modtech Structures LLC (Defendant)**
James K T Hunter    jhunter@pszyjw.com

☒  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On January 14, 2010  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge* will be *completed no later than 24 hours after the document is filed.*

**Judge**
Honorable Thomas B. Donovan
255 East Temple Street, Suite 1352
Los Angeles, CA  90012

☐  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge* will be *completed no later than 24 hours after the document is filed.*

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 14, 2010 | Michelle A. Carpenter | *[signature]* |
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                    **F 9013-3.1**

| In re:                              |                    | CHAPTER: 11                        |
|                                     |                    | ADV. NUMBER: 6:09-ap-01268-TD      |
|           MODTECH HOLDING, IN.,     |                    | CASE NUMBER: 6:08-bk-24324-TD      |
|                                     | Debtor(s).         |                                    |

**BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

### Counsel for Modtech Holdings, Inc. (Defendant)
Charles Liu    cliu@winthropcouchot.com
Marc J Winthrop    pj@winthropcouchot.com

### U.S. Trustee
United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                          **F 9013-3.1**