IRA D. KHARASCH (CA Bar #109084)
JAMES K.T. HUNTER (CA Bar #73369)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., Suite 1100
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: ikharasch@pszjlaw.com
jhunter@pszjlaw.com

Counsel for Defendant Modtech Structures LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re<br><br>MODTECH HOLDINGS, INC.,<br><br>    Debtor and Debtor-in-Possession. | Case No. 6:08-bk-24324-TD<br><br>Chapter 11 |
| MONTELEONE & MCCRORY, LLP,<br><br>    Plaintiff,<br><br>vs.<br><br>MODTECH HOLDINGS, INC., and MODTECH STRUCTURES LLC,<br><br>    Defendants. | Adv. Case No. 6:09-ap-01268-TD<br><br>**REPLY MEMORANDUM OF DEFENDANT MODTECH STRUCTURES LLC ("MSL") IN SUPPORT OF MSL'S MOTION FOR SUMMARY JUDGMENT**<br><br>**<u>Live Hearing</u>:**<br>**DATE:** **January 28, 2010**<br>**TIME:** **10:00 a.m.**<br>**PLACE:** **Courtroom 1345**<br>**255 E. Temple Street**<br>**Los Angeles, CA 9012**<br><br>**-and-**<br><br>**<u>Via Video Conference</u>**<br>**DATE:** **January 28, 2010**<br>**TIME:** **10:00 a.m.**<br>**PLACE:** **Courtroom 303**<br>**3420 Twelfth Street**<br>**Riverside, CA 92501** |

51404-008\DOCS_LA:214399.1

## I.

## **MONTELEONE & McCRORY DID NOT COMPLY**

## **WITH ITS OBLIGATIONS UNDER RULE 3-300**

In its opposition to MSL's motion for summary judgment, M&M admits that the M&M Claimed Attorneys' Lien constituted an "adverse interest" within the meaning of Rule 3-300, but argues that the Retainer Agreement fully complied with all of its obligations under that Rule. M&M rejects the argument supposedly made by MSL that "M&M must prove that changing lien provision was discussed orally by the parties before the Retainer Agreement was signed by Modtech."

Addressing the latter point first, MSL has not argued, and is not arguing, that MSL's "full disclosure" obligation was required to be met orally rather than in the written Retainer Agreement itself. Rather, turning to the former argument, MSL contends that (1) the written disclosures in the Retainer Agreement did not, standing alone, satisfy the requisite full disclosure and (2) there is no evidence of any oral disclosures that might be argued to have provided the full disclosure not set forth in the Retainer Agreement itself.

Apparently, M&M interprets Rule 3-300 as requiring that the "full disclosure" must be "in writing". MSL agrees that that is a logical, if not necessarily inescapable, reading of the Rule's language. Regardless, given that M&M concedes that it relies solely on the written provisions of the Retainer Agreement to fulfill all of the disclosure requirements of Rule 3-300, the issue resolves to whether the written disclosures regarding the M&M Claimed Attorneys' Lien set forth in the Retainer Agreement by themselves satisfied the disclosure requirements of Rule 3-300.

MSL agrees that the Retainer Agreement adequately describes the nature and extent of the M&M Claimed Attorneys' Lien; and, as far as MSL can discern, M&M is not contending that the Retainer Agreement describes the "actual and reasonably foreseeable adverse consequences to the client" [quoted from Rule 3-310(A)(1), not Rule 3-300] of the M&M Claimed Attorneys' Lien. Thus, the issue here squarely presented is whether, in order for a written attorneys' lien provision to be enforceable under Rule 3-300, it must disclose not only the lien's nature and extent, but also the actual and reasonably foreseeable adverse consequences of the granting of the lien to the client. Or, to phrase the issue in the specific context of the California Supreme Court's decision in *Fletcher v.*

1

*Davis*, 33 Cal. 4th 61, 14 Cal. Rptr. 3d 58 (Cal. 2004) ("*Fletcher*"), which first declared that an attorney's lien constituted an "adverse interest" within the meaning of Rule 3-300, what disclosure requirements necessarily follow from the California Supreme Court's designation of an attorney's lien as an "adverse interest"?

While no California case directly addresses the issue of what Rule 3-300 requires to be disclosed regarding the "adverse interest" created by an attorney's lien, the California cases are clear as to what is required in general when an attorney enters into any business dealing with a client. Preliminarily, however, it is important to note that California law holds an attorney who is negotiating a retention agreement with a prospective client to the same standard as a previously retained attorney. As stated by the California Supreme Court in *Beery v. State Bar of California*, 43 Cal. 3d 802, 811, 239 Cal. Rptr. 121, 125:

> "The evidence amply supports the existence of an attorney-client relationship at the time of the loan transaction. '<u>The fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result</u>.' (*Westinghouse Elec. Corp. v. Kerr-McGee Corp.* (7th Cir 1978) 580 F.2nd 1311, 1319, fn. omitted.) 'When a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established *prima facie*.' (*Perkins v. West Coast Lumber Co.* (1900) 129 Cal. 427, 429, 62 P. 57.) ' The absence of an agreement with respect to the fee to be charged does not prevent the relationship from arising.' (*Miller v. Metzinger* (1979) 91 Cal.App.3d 31, 39, 154 Cal.Rptr. 22.) Coss sought and obtained petitioner's legal advice regarding preparation of a will at the same time that petitioner induced Coss to enter into the business transaction, and so an attorney-client relationship existed at that time." (*Id.*, 43 Cal. 3d at 811, 239 Cal.Rptr. at 125, emphasis added.)

*Accord: Barton v. U.S. Dist. Ct., Cent. Dist. Cal.*, 410 F.3d 1104, 1111 (9th Cir. 2005) ["Under *Beery*, '[t]he fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result.'"]

Indeed, it is precisely because California law recognizes that an attorney's fiduciary obligation to avoid taking advantage of a client applies equally to a prospective client that the California Supreme Court in *Fletcher* held that the negotiation for the granting of an attorney's lien

with a <u>prospective</u> client constituted an "adverse interest" subject to the requirements of Rule 3-300. Accordingly, M&M is not subject to any lesser standard of fair dealing or disclosure in its negotiation of the Retainer Agreement with Modtech because, at the time the negotiations occurred, Modtech was a prospective, rather than existing, client. Neither the language of Rule 3-300 nor any case law warrants any such invidious distinction between prospective and existing clients.

Returning to the standards required under California case law for a business dealing between an attorney and his client, the California Supreme Court in *Beery, supra,* discussed those standards at length as follows:

> "All business dealings between an attorney and client in which the attorney benefits are closely scrutinized for unfairness on the attorney's part [citations] and attorneys have been disciplined for inducing clients to invest in enterprises without fully apprising them of the risks. [Citations.]" (*Yokozeki v. State Bar* (1974) 11 Cal.3d 436, 445, fn. 4 [ 113 Cal.Rptr. 602, 521 P.2d 858].)
>
> "While an attorney is not prohibited from having business transactions with his client, yet, inasmuch as the relation of attorney and client is one wherein the attorney is apt to have very great influence over the client, especially in transactions which are a part of or intimately connected with the very business in reference to which the relation exists, such transactions are always scrutinized by courts with jealous care, and are set aside at the mere instance of the client, unless the attorney can show by extrinsic evidence that his client acted with full knowledge of all the facts connected with such transaction, and fully understood their effect; and in any attempt by the attorney to enforce an agreement on the part of the client growing out of such transaction, the burden of proof is always upon the attorney to show that the dealing was fair and just, and that the client was fully advised. [Citations.] <u>In the words of Lord Eldon, he must make it manifest that he gave to his client 'all that reasonable advice against himself that he would have given him against a third person.</u>' (*Gibson v. Jeyes*, 6 Ves. 278.)" (*Felton v. Le Breton* (1891) 92 Cal. 457, 469 [ 28 P. 490]. *See also Estate of Witt* (1926) 198 Cal. 407, 419 [ 245 P. 197]; *Gold v. Greenwald* (1966) 247 Cal.App.2d 296, 305-306 [ 55 Cal.Rptr. 660].)

(*Id.,* 43 Cal.3d at 813-4, 239 Cal.Rptr. at 126; emphasis added.)

In *Mayhew v. Benninghoff*, 53 Cal.App.4th 1365, 62 Cal.Rptr.2d 27 (Cal.App. 4th Dist. 1997), the court expressly cited the above-emphasized language of the quotation from *Beery* as announcing the standard required under Rule 3-300 as follows:

>Rule 3-300 of the Rules of Professional Conduct requires attorneys who enter into business transactions with their clients to first advise them in writing to seek "the advice of an independent lawyer of the client's choice."  The attorney is further obligated to give "his client 'all that reasonable advice against himself that he would have given him against a third person.'" (Beery v. State Bar (1987) 43 Cal.3d 802, 813 [ 239 Cal.Rptr. 121, 739 P.2d 1289].)

(*Id.,* 53 Cal.App 4th at 1369, 62 Cal.Rptr. 2d at 30.)

While M&M argues that *Mayhew* can be ignored because it "concerned an attorney's attempt to use an arbitration provision set forth in an engagement letter to compel arbitration in an unrelated business dispute with his client" (M&M Opposition, p. 8, fn. 1), the distinctions between the facts of *Mayhew* and those here presented in no way negate the significance of *Mayhew's* (and, *a fortiori, Beery's*) announcement of the general standard that applies to measuring the adequacy of an attorney's disclosures in connection with a business dealing[1] with a prospective, or existing, client – namely:  the attorney must give "his client 'all that reasonable advice against himself that he would have given him against a third person.'"  M&M submits that, at a minimum, an attorney giving that advice against himself that he would have given against a third person must disclose the reasonably foreseeable adverse consequence that caused the California Supreme Court in *Fletcher* to decide that an attorney's lien constituted an adverse interest in the first place, that being that "a charging lien could significantly <u>impair</u> the client's interest by delaying payment of recovery or settlement proceeds until any disputes over the lien can be resolved." (*Fletcher, supra*, 33 Cal.4th at 68, 14 Cal.Rptr. 3d at 63-4; emphasis in original.)  And as previously noted, Rule 3-310(A)(1) provides that, with respect to avoiding the representation of "adverse interests", "'[d]isclosure' means informing the client or former client of the relevant circumstances <u>and of the actual and foreseeable adverse consequences to the client or former client</u>." (Emphasis added.)

In sum, California law requires that an attorney entering into a business dealing with, or acquiring an adverse interest to, a prospective or existing client must either ensure that the client actually obtains independent counsel or establish that such attorney himself provided the client the

---

[1] While *Beery* and *Mayhew* refer to "business dealings" rather than "adverse interests", Rule 3-300's introductory paragraph clearly provides that all three of the requirements set forth in Rule 3-300(A)-(C) are equally required whether a "business dealing" or an "adverse interest" is involved.

same advice against himself that he would have provided against a third party. At a minimum, that advice must include the reasonably foreseeable adverse consequences of the business dealing or adverse interest. Since M&M did not provide that advice to Modtech, the M&M Claimed Attorneys' Lien was and remains unenforceable *ab initio.*

## II.

## THE "SECRET" CHARGING LIEN DISCUSSED IN *CETENKO* IS LIMITED TO RELATED ATTORNEYS' FEES

While M&M argues that the California Supreme Court's decision in *Cetenko v. United California Bank*, 30 Cal.3d 528, 179 Cal.Rptr. 902 (Cal. 1982) should be interpreted as holding that "secret" attorney's liens may cover both related and unrelated attorney's fees, a close reading of *Cetenko* and the related California case law establishes that that argument is untenable. First, *Cetenko* itself dealt only with an attorney's lien on related proceeds. See, *Cetenko*, *supra,* 30 Cal.3d at 530, 179 Cal.Rptr. at 903 ["The agreement provided further that most of the fee would be deferred and that fees owed by Cetenko would become a lien upon any recovery in the action." (Emphasis added.)].

Second, *Cetenko* relied on the California Supreme Court's prior ruling in *Haupt v. Charlie's Kosher Market*, 17 Cal.2d 843, 112 P.2d 627 (Cal. 1941), which the *Cetenko* court noted "is directly in point." (*Cetenko*, *supra*, 30 Cal.3d at 534, 179 Cal.Rptr. at 906.) *Haupt*, which constitutes the seminal California case on the existence of an attorney's "secret" lien, clearly holds that that lien is limited to fees incurred in the related action as follows:

> "The priority issue was properly resolved in favor of plaintiff's attorney's lien, created by written contract with his client. In Tracy v. Ringole, 87 Cal.App. 549, 262 P. 73, 74, wherein was involved an attorney's contingent-fee contract with provision of a lien, as here, it is declared that: 'The special or charging lien of an attorney has been held to be an equitable right to have the fees and costs due to him for services in a suit secured to him out of the judgment or recovery in the particular action, the attorney to the extent of such services being regarded as an equitable assignee of the judgment. It is based, as in the case of a lien proper, on the natural equity that a party should not be allowed to appropriate the whole of a judgment in his favor without paying for the services of his attorney in obtaining such judgment. The use of the term lien in this connection has been criticized as

inaccurate, and the right of the attorney has been said to be merely a claim to the equitable interference of the court. 6 C.J. [p.] 767. . .'"
(*Id.*, 17 Cal.2d at 845, 112 P.2d at 682; emphasis added.

See, also, *Waltrip v. Kimberlin*, 164 Cal.App.4th 517, 525-6, 79 Cal.Rptr. 3d 460, 465-6 (Cal.App.3 Dist. 2008) [citing both *Cetenko* and *Haupt*, and adding the following: "Equitable considerations also favor the attorney lien. It is a principle of equity that 'those whose labor, skills and materials resulted in the creation of a fund should be entitled to priority in the payment of their claims from such source.'"]; *Hoover-Reynolds v. Superior Court*, 30 Cal.App.4th 1273, 1277, 58 Cal.Rptr.2d 173, 176 (Cal.App. 4 Dist. 1996) ["In California an attorney may ordinarily obtain a contractual charging lien for fees enforceable against the recovery obtained in the lawsuit the attorney prosecuted for his client. *Haupt....*"].

In sum, while M&M attempts to dismiss MSL's quotation from *In re Croshier*, 228 B.R. 468 (Bkrptcy. S.D. Cal. 1998), on the ground that "the bankruptcy court misinterpreted the holding in *Cetenko*" (M&M's Opposition, p. 15, line 4; emphasis removed), the reality is *Croshier* correctly interprets *Cetenko*. *Haupt* and *Cetenko* did not sanction the existence of a "secret" attorney's lien because of any special desire to advantage attorneys over other creditors, but because, with respect to fees earned in a related action, both public policy and equitable considerations mandated recognizing such a lien.

As stated in *California Civil Code* §3510, "[w]hen the reason for a rule ceases, so should the rule itself." Accordingly, M&M's "secret" charging lien must be found to be limited to those prepetition fees earned in related actions; and, as previously noted and not contested by M&M, those fees total $11,467.05.

## III.

## <u>CONCLUSION</u>

MSL's motion for summary judgment should be granted.

Dated:　　January 20, 2010　　　　　　　　　PACHULSKI STANG ZIEHL & JONES LLP

　　　　　　　　　　　　　　　　　　　　　　By　*/s/ James K.T. Hunter*
　　　　　　　　　　　　　　　　　　　　　　　　James K.T. Hunter
　　　　　　　　　　　　　　　　　　　　　　　　Counsel for Defendant Modtech Structures
　　　　　　　　　　　　　　　　　　　　　　　　LLC

| | |
|---|---|
| In re:<br>MODTECH HOLDINGS, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 6:08-bk-24324-TD<br><br>Adv. No. 6:09-ap-01268-TD |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA  90067

A true and correct copy of the foregoing document described as **REPLY MEMORANDUM OF DEFENDANT MODTECH STRUCTURES LLC ("MSL") IN SUPPORT OF MSL'S MOTION FOR SUMMARY JUDGMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 20, 2010**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **January 20, 2010** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 20, 2010** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**VIA HAND DELIVERY**
The Honorable Thomas B. Donovan
U. S. Bankruptcy Court - Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1352
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 20, 2010 | Nancy H. Brown | /s/ Nancy H. Brown |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                                                 **F 9013-3.1**

| | |
|---|---|
| In re:<br>MODTECH HOLDINGS, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 6:08-bk-24324-TD<br><br>Adv. No. 6:09-ap-01268-TD |

**ADDITIONAL SERVICE INFORMATION** (if needed):

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Scott C Clarkson     sclarkson@lawcgm.com
- James K T Hunter     jhunter@pszyjw.com
- Charles Liu     cliu@winthropcouchot.com
- Eve A Marsella     emarsella@lawcgm.com
- United States Trustee (RS)     ustpregion16.rs.ecf@usdoj.gov
- Marc J Winthrop     pj@winthropcouchot.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                                       **F 9013-3.1**